IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NELSON CALDERON, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 13 C 5974 |
| | ) | |
| RANDY PFISTER, | ) | Judge Virginia M. Kendall |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Nelson Calderon[1] filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 21, 2013. He subsequently amended the petition on October 7 and December 10 of that year. Calderon is currently incarcerated in the Pontiac Correctional Center serving a natural life sentence for aggravated kidnapping. For the following reasons, the Court denies Calderon's petition.

## BACKGROUND

The Court presumes that the facts established by the state court are true unless rebutted by clear and convincing evidence, which Calderon has not attempted to do. *See* 28 U.S.C. § 2254; *Bolton v. Akpore*, 730 F.3d 685, 687 (7th Cir. 2013). Unless otherwise noted, the Court relies on Exhibit C to Dkt. No. 33, which is an opinion of the Appellate Court of Illinois, First Judicial District, for the facts in this section. The opinion is also published at 911 N.E.2d 1115 (Ill. App. Ct. 2009) (*hereinafter Calderon I*).

---

[1] Parts of the state court record and Illinois Department of Corrections records suggest that the petitioner's name is Calderson, not Calderon. (*Eg.* Dkt. No. 33 Ex. B p. 88). In his filings in this Court petitioner calls himself "Calderon" and this Court will do the same. To remove any ambiguity as to the petitioner's identity, this Order concerns the individual to whom the Illinois Department of Corrections has assigned IDOC #B-03005.

### A.    The Crime

On the afternoon of June 21, 2001, David Vasquez, Calderon's victim, parked at a gas station at 47th Street and Archer Avenue on Chicago's southwest side. While Vasquez was inside the gas station purchasing cigarettes, Calderon opened the passenger door to Vasquez's car and sat in the passenger seat. When Vasquez returned to his car, Vasquez saw Calderon in the front seat and told Calderon to "get out." Calderon replied that Vasquez should get in the car, suggesting that Calderon's friends in a nearby Chevy Suburban would hurt Vasquez if he failed to comply. Vasquez got in the car. Once inside, Calderon told Vasquez that he believed Vasquez to be a member of a gang who had recently robbed a friend of Calderon. Calderon ordered Vasquez to show him any money that he had in his pockets; apparently the stolen money was marked in a recognizable way. Vasquez complied and Calderon determined that it was not the money that had been stolen from his friend.

Calderon instructed Vasquez to drive to an address near the intersection of 55th Street and Lawndale Avenue, about a mile south of the gas station. Vasquez had previously lived at the address and a friend of Vasquez, Moises Guzman, still lived there. The Chevy Suburban followed Calderon and Vasquez to the address. Calderon kept his hand in his pocket during the five to ten minute drive.

When Vasquez and Calderon arrived at the address, Vasquez knocked at the door and Guzman let the two men inside. Calderon told Guzman that there were men waiting outside in the Suburban who would come inside if Guzman did not comply with Calderon's orders. Calderon then instructed Vasquez to tell Guzman "about the gang and all that." At Calderon's behest, Vasquez told Guzman that Calderon was searing for marked money that had been stolen. Guzman showed Calderon the money in his wallet, which did not match the stolen money.

Calderon then instructed Vasquez and Guzman to give him more money and jewelry. Guzman gave Calderon an additional $100 and Vasquez gave Calderon a ring, an earring, and a bracelet. Calderon then left the house.

**B.  Trial**

An Illinois grand jury indicted Calderon on five counts: (1) aggravated kidnapping for the purpose of obtaining ransom; (2) aggravated kidnapping based on the commission of a robbery against Vasquez; (3) robbery of Guzman; (4) robbery of Vasquez; and (5) residential burglary. The State dismissed the first count and Calderon proceeded to a jury trial on the remaining four. The Court limits its recitation of the facts of the trial to those pertinent to the present petition.

Prior to the trial, Calderon filed a motion to suppress a line-up identification that that was the result of what he argued was an unduly suggestive line-up. Calderon was the oldest person in the line-up and the only who wore his hair in a ponytail. The trial court denied the motion orally, reasoning that Calderon did not appear older than any other member of the line-up and that his ponytail was not visible in the photo of the line-up that had been entered into evidence. (Dkt. No. 33 Ex. B1 p. 312-13).

Calderon filed a motion in limine seeking to bar the use of prior convictions to impeach Calderon's credibility if he chose to testify. The trial court reserved judgment on the motion unless and until Calderon actually testified. Calderon did not testify at trial.

Prior to the close of evidence, Calderon's counsel tendered, and the Court issued, a jury instruction on unlawful restraint, which is a lesser-included offense of aggravated kidnapping. (Dkt. No. 33 Ex. A p. 95). The trial court did not conduct a colloquy on the record to determine whether Calderon personally consented to the instruction.

In addition to the unlawful restraint instruction, the court instructed the jury on the elements of aggravated kidnapping, which, among other things, required the jury to determine whether Calderon secretly confined Vasquez against his will. (*Id.* at 94). While the jury deliberated, it sent a note to the judge inquiring as to the "legal definition" of "detain," "secretly," and "confine." (*Id.* p. 122). The court offered to provide dictionary definitions of the terms, but counsel for both the State and Calderon declined. After consulting with Calderon's counsel and counsel for the State, the trial court instructed the jury that the jury had all the instructions in the case and that they should continue to deliberate. (*Id.*).

The jury returned a verdict of guilty on all four counts pursued at trial. The court sentenced Vasquez to natural life in prison.

### C.    Direct Appeal

Calderon appealed his conviction and raised five claims: (1) that the State failed to introduce sufficient evidence to prove him guilty of aggravated kidnapping beyond a reasonable doubt because there was no evidence that Calderon secretly confined the victim; (2) that the trial court's decision to reserve judgment on his motion to bar his prior convictions unless and until Calderon testified prevented Calderon from making an informed and intelligent decision about whether to testify; (3) the trial court deprived him of a fair trial by failing to admonish him of his right to decide whether to offer jury instructions on the lesser-included offense of unlawful restraint; (4) the trial court erred in imposing extended-term sentences on the robbery convictions; and (5) that the mittimus did not properly reflect the convictions and sentences entered by the Court. (*See* Dkt. No. 33 Ex. E). The State confessed error as to Calderon's fourth and fifth claims and the appellate court remanded for resentencing on the robbery convictions

and to correct the mittimus. (Dkt. No. 33 Ex. C pp. 19-21). The appellate court otherwise affirmed Calderon's conviction, rejecting the first three grounds for appeal on the merits.

Calderon then filed an unsuccessful petition for leave to appeal ("PLA") to the Illinois Supreme Court. (*See* Dkt. No. 33 Ex. G). In the PLA, Calderon presented three arguments: (1) that the Illinois Supreme Court should provide a clear definition of the "secret confinement" element of aggravated kidnapping; (2) that the appellate court unreasonably narrowed the holding of *People v. Medina*, 851 N.E.2d 1220 (Ill. 2006), by requiring that a defendant be convicted of a lesser-included offense before he may claim that the trial court erred in failing to allow him to decide personally whether to instruct the jury on that lesser-included offense; and (3) that Calderon's choice not to testify should not prevent appellate review of the trial court's policy of deferring a ruling on a motion in limine to bar prior-conviction impeachment until after the defendant takes the stand. (*Id.*). The Illinois Supreme Court denied leave to appeal. (Dkt. No. 33 Ex. H).

### D.     State Collateral Attack

Calderon filed a pro se post-conviction petition in Illinois state court raising a number of claims. (Dkt. No. 33 Ex. I). Specifically, the petition presented the following claims: (1) that the trial court's failure to give the jury dictionary definitions in response to its questions concerning the elements of aggravated kidnapping; (2) that trial counsel was constitutionally ineffective for five reasons; (3) that appellate counsel was constitutionally ineffective for two reasons; (4) that Calderon was convicted and sentenced under an unconstitutional and void statute; (5) that Calderon's conviction and sentence are unconstitutional because the Habitual Criminal Act was repealed; and (6) that the trial court failed to question prospective jurors in accordance with Illinois Supreme Court Rule 431(b). Specifically, Calderon argued that his trial counsel was

constitutionally ineffective because counsel: (1) failed to request that the trial court give the jury dictionary definitions of the words "detained." "secretly," and "confined" in response to jury's question about definition of words; (2) failed to warn Calderon that if he did not testify he would forfeit his right to appeal the trial court's decision not to rule on his motion in limine; (3) failed to pursue a proper defense; (4) tendered a jury instruction on the lesser-included offense of unlawful restraint; and (5) failed to challenge the State's insufficient evidence on the residential burglary and robbery charges. Calderon argued that appellate counsel was ineffective because counsel failed to: (1) argue on direct appeal that trial counsel was ineffective and (2) discuss the drive to the victim's apartment in asserting that the evidence was insufficient to support an aggravated kidnapping conviction. The circuit court dismissed the petition summarily as frivolous and patently without merit.

Calderon appealed the dismissal of his petition to the Illinois Appellate Court, arguing that (1) appellate counsel was ineffective for not arguing on direct appeal that trial counsel was ineffective for failing to request the dictionary definitions described above and (2) the post-conviction trial court failed to address all of the claims addressed in his petition. (Dkt. No. 33 Ex. K). The Illinois Appellate Court rejected both claims and affirmed the dismissal of his petition. *See People v. Calderon*, No. 1-11-0656, 2013 IL App (1st) 110656-U (unpublished order) (*hereinafter Calderon II*).

Calderon filed a PLA in the Illinois Supreme Court, seeking leave to appeal the intermediate appellate court's order on the same ineffective assistance of counsel grounds that he had pursued in the Illinois Appellate Court. (*See* Dkt. No. 33 Ex. O). The Illinois Supreme Court denied leave to appeal. (*See* Dkt. No. 33 Ex. P).

Calderon timely filed the present petition pursuant to 28 U.S.C. § 2254. Calderon presents five grounds for habeas relief: (1) the State failed to prove Calderon guilty of aggravated kidnapping beyond a reasonable doubt; (2) Calderon was deprived of his right to make an intelligent and informed decision about whether to testify at trial; (3) the trial court's failure to admonish him about his personal right to decide to tender a jury instruction on the lesser-included offense of unlawful restraint; (4) ineffective assistance of trial counsel for failing to request that the trial court provide the jury with dictionary definitions of "detain," "confine," and "secretly" and ineffective assistance of appellate counsel for failing to argue for trial counsel's ineffectiveness; and (5) ineffective assistance of appellate counsel for failing to argue on direct appeal that the trial court committed plain error in denying Calderon's pretrial motion to suppress line-up identification.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs petitions for writs of habeas corpus filed after April 24, 1996. *See Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, the Court "may not grant a habeas corpus application 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . 'or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010) (quoting 28 U.S.C. § 2254(d)) (internal citations omitted). "[C]learly established federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal quotation marks omitted). A habeas petitioner under § 2254 must "show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The inquiry into the reasonableness of the application of federal law "is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman,* 398 F.3d 597, 602 (7th Cir.2005); *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000) (an unreasonable application of federal law is different from an incorrect application of federal law). The "AEDPA's standard is intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks and citation omitted).

As a prerequisite for review in this Court, a §2254 petition must give the state court a full and fair opportunity to address the merits of his or her federal claims. In order to provide the state court a full and fair opportunity to address the merits of a claim, a petitioner must "fairly present" the federal nature of the claim to the state court. *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (section 2254 petitioner "must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim"). "A petitioner must raise his claims below to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Villanueva v. Anglin*, 719 F.3d 769, 775 (7th Cir. 2013) (internal quotation marks and citation omitted). Fair presentment requires "that the factual and legal substance remain the same" in the state and federal court. *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006). Several factors guide the Court's analysis: "whether the petitioner (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar

factual situation; (3) asserted the claims in terms particular to a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation." *Villanueva*, 719 F.3d at 775.

The Court also "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "A claim will be procedurally defaulted – and barred from federal review – if the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.' " *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). The state court's opinion must show that the court "actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). "A state law ground is adequate when it is a firmly established and regularly followed state practice as the time it is applied." *Lee*, 750 F.3d at 693 (internal citation and quotation marks omitted).

Moreover, the Court has the power to grant federal habeas relief "only on the ground that [petitioner] is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(d). Thus, any claim that Calderon is in Illinois custody in violation of Illinois law is not cognizable in this Court. *See Williams v. Pugh*, 489 F. App'x 130, 132 (7th Cir. 2012) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.") (quoting *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010)) (alteration and emphasis in original). A federal habeas petition may argue that an error of state law can implicate the Fourteenth Amendment due process right to a fundamentally fair trial, "but only if the state court committed an error [of state law] so serious as to render it likely that an

innocent person was convicted can the error be described as a deprivation of due process." *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004). In order to create a nexus between the alleged error of state law and federal due process rights, the petitioner must "[do] more than merely cite his constitutional right to a fair trial." *Id*. at 512.

Procedural default does not necessarily terminate the petitioner's claim. *See House v. Bell*, 547 U.S. 518, 536 (2006). This Court may still hear a petitioner's procedurally defaulted claims if he can demonstrate both cause and prejudice resulting from procedural default, or that a fundamental miscarriage of justice would occur if this Court refused to hear his claims because he is actually innocent. *Id.*

## DISCUSSION

Calderon's amended petition presents five claims. Each is procedurally defaulted, not cognizable on federal habeas relief, or meritless. Those that are procedurally defaulted are not excused because Calderon has failed to show – in fact, failed to argue – either cause for the default or prejudice he has suffered as a result, or that the procedural default has led to a fundamental miscarriage of justice.

### A.    Claim 1 is Procedurally Defaulted

Calderon first argues that the state failed to prove him guilty beyond a reasonable doubt of aggravated kidnapping under 720 ILCS 5/10-2(a)(3). Calderon presented this claim on direct appeal to the Illinois Appellate Court, but did not present this claim to the Supreme Court of Illinois in his petition for leave to appeal (*see* Dkt. No. 33 Ex. G) or at any stage of his state collateral attack. (*See* Dkt. No. 33 Exs. I, K, and O). Calderon has thus failed to provide the state court a fair opportunity to act on his claim that the evidence was insufficient to prove him guilty beyond a reasonable doubt with respect to aggravated kidnapping and the claim is subject to procedural default. *See Bolton*, 930 F.3d at 694-95 (failure to present federal habeas claims to

Illinois Supreme Court for discretionary review results in procedural default) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). Put simply, Calderon's "failure to present" his sufficiency of the evidence claim "to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of [that claim]." *O'Sullivan*, 526 U.S. at 848.

The Court, therefore, will not address the sufficiency of the evidence claim on the merits unless Calderon has demonstrated "both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Bolton*, 730 F.3d at 698 (citing *Dretke v. Haley*, 541 U.S 386, 393 (2004)). Calderon's petition "fails to argue either point" and as a result The Court "cannot consider his claim." *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

### B. Claim 2 is Procedurally Defaulted

Calderon next argues that the trial court deprived him of an opportunity to make an informed decision about whether to testify when it reserved ruling on a motion in limine unless and until Calderon actually testified. Calderon sought an order precluding the state from introducing previous convictions for the purpose of cross-examination on the theory that these convictions were unduly prejudicial. The court did not rule on the motion, but instead elected to reserve its ruling unless or until Calderon testified. Calderon elected not to testify. Calderon is correct that the Illinois Supreme Court has held that it is an abuse of discretion for a trial judge to reserve a ruling in this manner. *See People v. Patrick*, 908 N.E.2d 1 (2009). On direct appeal, the Illinois Appellate Court – the last court to render judgment on the issue – held that Calderon had not preserved the issue for appeal because he had not actually testified. This procedural ruling is an independent state law ground that is adequate to support the judgment of the Illinois Appellate Court. Thus, the claim is subject to procedural default.

The Illinois Appellate Court "clearly and expressly" stated that its decision rested on a state law procedural ground, namely that Calderon elected not to testify and thus did not preserve the issue for appeal. The analysis of the Illinois Appellate Court on direct appeal was succinct:

> The defendant next contends he was denied his right to a fair trial because the trial court refused to rule on his motion *in limine* to bar prior convictions unless and until he testified. Our supreme court recently held that such a practice amounts to an abuse of discretion. *People v. Patrick*, 908 N.E.2d 1 (2009). *Patrick* also makes clear, however, that to preserve such a claim for appeal, the defendant must testify at trial. *Patrick*, 908 N.E.2d at 10. In this case, the defendant choose not to testify. Thus, his claim was not preserved.

*Calderon I*, 911 N.E.2d 1115, 1123-24 (Ill. App. Ct. 2009). The Illinois Appellate Court actually relied on *Patrick*'s procedural rule as an independent basis for its decision to affirm Calderon's conviction in this regard. The Supreme Court of Illinois in *Patrick* relied on *People v. Whitehead*, 508 N.E.2d 687 (Ill. 1987), for the proposition that a defendant must testify in order to seek appellate relief on motions in limine related to prior convictions when the defendant elects not to testify. *See Patrick*, 911 N.E.2d at 10. Moreover, the *Patrick* court was explicit that the procedural rule on which it relied was a creature of Illinois law, and not simply an adoption of a similar federal rule established by the Supreme Court of the United States in *Luce v. United States*, 469 U.S. 38 (1984). *See Patrick*, 908 N.E.2d at 11. ("This court's rationale in *Whitehead* goes beyond the *Luce* rationale and provides this court's independent basis for requiring a defendant to testify and preserve the issue for review."). That procedural rule is also adequate to support the judgment of the Illinois Appellate Court. It is a "well-rooted procedural requirement," *see Lee*, 750 F.3d at 694, as evidenced by the decades-old precedent that the Illinois Supreme Court cited as justification for the rule. In sum, the last court to render judgment on Calderon's claim explicitly relied on a state law procedural ground independent from Calderon's federal constitutional claim. The federal claim is procedurally defaulted and, again,

Calderon has not attempted to argue cause, prejudice, or that the procedural default would result in a fundamental miscarriage of justice.

### C. Claim 3 is either not Cognizable or Procedurally Defaulted

Next, Calderon seeks relief on the ground that he was denied his due process right to a fundamentally fair trial when the trial court failed to confirm on the record that Calderon personally desired to tender a lesser-included offense instruction. Illinois law grants criminal defendants the exclusive and personal right to decide whether to tender a jury instruction on a lesser-included offense, *see People v. Medina*, 851 N.E.2d 1220, 1225 (Ill. 2006), and Calderon attempts to argue that the court's failure to document his personal acquiescence in the lesser-included offense instruction was improper. Calderon has not sufficiently shown that any purported violation of state law deprived him of a federal right. The claim is thus not cognizable in a § 2254 petition. To the extent that Calderon does present a federal claim, the claim is procedurally defaulted because he has not presented it to the Illinois courts for one full round of review.

### 1. The claim is not cognizable because it is based on a purported error of state law

The relief that Calderon seeks is not cognizable in a federal habeas petition because it invokes only state law. *See Pugh*, 489 F. App'x at 132 ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). Calderon fails to cite any federal cases or statutes creating a federal corollary to the right that criminal defendants in Illinois enjoy under *Medina*. Even in his reply here, Calderon argues that "*Illinois courts* recognize five decisions that belong exclusively to a defendant," unmistakably invoking Illinois law. (*See* Dkt. No. 37 Ex. D p. 29) (emphasis added). *Medina* itself cites no federal precedent and it is clear that the rationale for the personal right to decide

whether to tender a lesser included offense instruction is a creature of state law. *See Medina*, 851 N.E.2d at 1224-26. The claim that the trial court erred in failing to ensure on the record that Calderon understood the risks associated with a lesser included offense instruction is rooted solely in Illinois law and therefore not cognizable in this Court.

Calderon likewise fails to explain how any purported *Medina* violation rendered it "likely that an innocent person was convicted" and therefore violated Calderon's federal due process rights. *See Perruquet*, 390 F.3d at 510. The Court acknowledges that Calderon's petition does state that his "conviction was obtained in violation of the Fifth and Sixth Amendment[s] of the U.S. Constitution" (Dkt. No. 16 p. 14), but Calderon does not explain how the trial court's alleged failure to follow state procedural law produced a trial that was fundamentally unfair within the meaning of the Fourteenth Amendment's Due Process Clause. In both his petition and his reply brief, Calderon explains at length the Illinois Supreme Court's rationale in *Medina* and his reasons for believing that the trial court violated *Medina*'s mandate, but goes no further. In other words, Calderon does not do "more than merely cite his constitutional right to a fair trial" and thus fails to sufficiently present a federal constitutional claim to this Court. *Perruquet*, 390 F,3d at 512.[2]

2.      The claim is procedurally defaulted

To the extent that Calderon does assert a federal claim in this Court, the claim is defaulted because Calderon has not fairly presented the federal claim to any state court in a prior proceeding. On direct appeal, Calderon argued that the trial court misapplied *Medina*, but did not cite any federal cases or argue that the trial court's errors were of a federal constitutional

---

[2] Moreover, the jury convicted Calderon of aggravated kidnapping, not for the lesser-included offense of unlawful restraint so it is unlikely that tendering the lesser-included offense instruction itself led to the conviction of an innocent person.

magnitude. Calderon's state habeas petition mentions the *Medina* issue only in passing and only in support of an argument for ineffective assistance of counsel that Calderon has not pursued here. (*See* Dkt. No. 33 Ex. I p. 21). Represented by counsel on appeal from the dismissal of that petition, Calderon did not pursue a theory of relief based on a *Medina* violation, (Dkt. No. 33 Ex. K), and also did not pursue a similar claim in his PLA. (Dkt. No. 33 Ex. O). The passing references to due process in Calderon's previous state court filings are insufficient to shoehorn his state law argument into a federal due process claim. *See Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007) (constitutional due process claim subject to procedural default when petitioner had asserted in state proceedings an "absolute statutory and Constitutional right" but relied solely on state law principles). In short, Calderon has never pursued a federal due process claim related to the trial court's failure to conduct a colloquy related to the lesser-included offense instruction and may not do so for the first time in this Court. Because the federal claim was not presented for one full round of state court review, it is subject to procedural default. Calderon has not attempted to argue that there is cause for the Court to overlook the default prejudice resulting from it. Calderon has also not argued that procedural default would result in a fundamental miscarriage of justice. Thus, the Court will not consider the merits of the claim. *See Crockett*, 542 F.3d at 1193.

### D.      Claim 4 is Meritless

Calderon next argues that trial counsel was constitutionally ineffective for failing to request that the court provide the jury with dictionary definitions of words contained within the aggravated kidnapping jury instruction, namely "detain," "confine," and "secretly" and that appellate counsel was ineffective for failing to raise the issue on direct appeal. The State concedes that there are no procedural bars preventing this Court from reviewing the claim on the

merits. (Dkt. No. 32 p. 31). Therefore, the Court must evaluate whether "the state-court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *Corcoran v. Neal*, 783 F.3d 676, 682-83 (7th Cir. 2015) (quoting 28 U.S.C. § 2254(d)) (internal quotation marks omitted). The Court finds that none of these grounds for habeas relief is present.

Calderon's ineffective assistance claim is based on the jury's purported misunderstanding of the elements of aggravated kidnapping and unlawful confinement and trial counsel's failure to attempt to remedy that understanding. The trial court instructed the jury that in order to find Calderon guilty to aggravated kidnapping, it had to find, in addition to other elements of the offense, that Calderon "intended to secretly confine David Vasquez against his will." (Dkt. No. 33 Ex. A p. 94). The trial court further instructed the jury that in order to find Calderon guilty of the lesser included offense of unlawful restraint, the jury had to find, in addition to other elements of the offense, that Calderon "knowingly and without legal authority detained David Vasquez." (*Id.* p. 96). During deliberations, the jury sent the trial court a note asking for "the legal definition" of "detain," "confine," and "secretly." (*Id.* p. 122). Calderon's counsel  that the court instruct the jury "that they've been given the instructions to the law in this case and they should continue to deliberate." (Dkt. No. 33 Ex. B2 p. 311). The prosecutor verified that no Illinois pattern jury instructions existed for the terms and agreed with counsel's suggestion. (*Id.* pp. 311-12). The Court offered to provide a dictionary definition, but both Calderon's counsel and the prosecutor declined. (*Id.* p. 312). The court responded to the jury in writing, instructing

the jury that it had all the instructions in the case and requested that they continue to deliberate. (Dkt. No. 33 Ex. A p. 122).

Calderon did not raise the ineffective assistance claim on direct appeal, but did raise it in his state collateral attack. *See Calderon II*, 2013 WL 811180 at *5. The Illinois Appellate Court addressed the claim on the merits and correctly noted that the constitutional effectiveness of both trial and appellate counsel are governed by "the two-prong test handed down by the United States Supreme Court in *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] and adopted by [the Illinois Supreme Court] in *People v. Albanese*, [473 N.E.2d 1246 (Ill. 1984)]," which required Calderon to show that counsel's performance was objectively unreasonable and that he suffered prejudice. *Id.* at 6. In other words, the Illinois Appellate Court did not apply "a rule that is opposite from the law established by the United States Supreme Court." *See Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014). Thus, this Court's review is limited to determining whether that court "unreasonably applie[d] that principle to the facts of the case." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 407-409 (2000)).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential." *See Harrington v. Richter*, 562 U.S. 86, 104-05 (2011); *see also Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012) (deferential § 2254(d) standard of review applies when state court has addressed both *Strickland* prongs on the merits). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Pruitt v. Neal*, --- F.3d ---, 2015 WL 3463341 at *22 (7th Cir. June 2, 2015) (quoting *Richter*, 562 U.S. at 105) (internal quotation marks omitted).

1. The Illinois Appellate Court's determination that Calderon's trial counsel was not constitutionally ineffective was not unreasonable

The Illinois Appellate Court determined that trial counsel's decision not provide definitions of particular terms in jury instructions was "a matter of trial strategy" and not objectively unreasonable. *Calderon II*, 2013 WL 811180 at *7; *see also Pruitt v. Neal*, 2015 WL 3463341 at *22. The court found that "[p]roviding the jury with dictionary definitions of the terms was in direct opposition to defense counsel's request for the jury to use its common sense meaning of the words." *Calderon II*, 2013 WL 811180 at *8. The court cited counsel's closing argument in support of its reasoning: "The legislature put a lot of effort into considering what language went into those instructions. . . . And the instructions again are the law as it exists in the State of Illinois as Judge Brosnahan told you." (Dkt. No. 33 Ex. B2 pp. 242-43). Specific to the term "secretly confined," counsel stated: "But again, that's the language contained in the jury instruction, and use your common sense as to what you would consider that to mean." (*Id.* p. 246).

This is not an unreasonable application of *Strickland* or any other federal precedent. The Illinois Appellate Court found that Calderon failed to "overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 694. The Illinois Appellate Court's opinion shows that, at the very least, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Pruitt*, 2015 WL 3463341 at *22. The Court therefore denies Calderon's petition to the extent it relies on his trial counsel's constitutional ineffectiveness.

2. The Illinois Appellate Court's determination that Calderon's appellate counsel was not constitutionally ineffective was not unreasonable

The proper standard for evaluating an ineffective assistance of appellate counsel claim is also "that enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). On appeal, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins,* 528 U.S. at 288. That said, it is "possible," albeit "difficult," to show that "counsel's failure to raise a particular claim" amounted to ineffective assistance. *Robbins*, 528 U.S. at 288.

The Illinois Appellate Court did not unreasonably apply *Strickland*, *Robbins* or any other Supreme Court precedent in reaching its conclusion that appellate counsel was not ineffective for electing not to raise ineffectiveness of trial counsel based on the decision not to provide dictionary definitions of these terms. That court held, correctly, that because trial counsel was not ineffective in electing not to request the dictionary definitions, appellate counsel was not ineffective for failing to argue trial counsel's ineffectiveness. *See, e.g.*, No. 14 C 3090, 2015 WL 1399511 at *12 (N.D. Ill. March 23, 2015) ("Because the underlying errors Petitioner alleges were committed by trial counsel do not constitute ineffective assistance . . . it follows that the failure to base an appeal off such conduct is also not ineffective assistance.").

### E.      Claim 5 is Procedurally Defaulted

Calderon's final claim is that his appellate attorney was ineffective for failing to argue that the trial court committed plain error in denying his motion to suppress the victims' line-up identification of him. Petitioner claims, and his counsel at the time claimed, that the line-up was unduly suggestive because Calderon was the oldest person in the line-up and the only person in the line-up with a ponytail. Calderon did not fairly present this claim though one complete round of review in state court. *See Baldwin*, 541 U.S. at 29. Indeed, Calderon did not present this

argument to any level of the Illinois courts, let alone present the claim through one complete round of review. Though Calderon did assert ineffectiveness of appellate counsel for various reasons in his state collateral proceeding, counsel's failure to argue that the trial court erred in admitting evidence of the line-up identification was not among the deficiencies to which Calderon pointed the court. This is insufficient to constitute one complete round of review. *See Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001) ("As we have noted before, it is not sufficient that the petitioner alleged various other errors by counsel; to set forth a claim of ineffective assistance, a petitioner must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance.") (internal citation and quotation marks omitted) (alterations deleted).

Calderon neither attempts to argue that the Court should excuse the default for any reason (*see* Dkt. No. 16 p. 17-18), nor invokes the fundamental-miscarriage of justice exception to the default rule. Procedural default accordingly bars habeas review of Calderon's claim for ineffective assistance of appellate counsel based on counsel's failure to argue that the trial court committed plain error in denying Calderon's motion to suppress line-up identification. *See Crockett*, 542 F.3d at 1193.

### F.    The Court Declines to Issue a Certificate of Appealability

A petitioner may not appeal a final order in a § 2254 proceeding unless the Court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a); *see also Bolton*, 730 F.3d at 697. The Court may issue a certificate of appealability only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). For the reasons discussed above, Calderon has not made that showing; reasonable jurists would not debate whether the challenges in his habeas petition should been resolved differently or determine that Calderon deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Calderon has not demonstrated the denial of a constitutional right with respect to any of his claims. Accordingly, the Court declines to issue a certificate of appealability.

**CONCLUSION**

For the reasons stated herein, Calderon's petition [1] is denied.

_____

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  6/29/2015